UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE LUNSFORD,<br><br>Plaintiff,<br><br>v.<br><br>GARFIELD BEACH CVS, LLC,[1]<br><br>Defendant. | Case No. 1:24-cv-00732-KES-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 43)<br><br>**14-Day Objection Period** |

Pending before the undersigned[2] is the motion of Defendant Garfield Beach CVS, LLC ("Defendant" or "CVS") for summary judgment, or in the alternative for partial summary judgment, and separate statement of undisputed material facts in support thereof, filed on April 20, 2026. (Docs. 43, 43-12). On May 4, 2026, Plaintiff Diane Lunsford ("Plaintiff") filed an opposition, a response to Defendants' separate statement of undisputed material facts, and a separate statement of undisputed material facts. (Docs. 45, 45-1). On May 14, 2026, Defendant filed a reply in support

[1] Defendant Garfield Beach CVS, LLC was erroneously sued as CVS Health Corporation. *See* (Docs. 1, 43).

[2] On May 22, 2026, the presiding district judge referred Defendant's motion for summary judgment to the undersigned for the preparation of findings and recommendations and/or other appropriate action and vacated the noticed hearing on the motion. (Doc. 47).

of its motion and numerous evidentiary objections to the report of Plaintiff's expert witness filed in opposition to the motion. (Docs. 46, 46-1).

## I. <u>Relevant Background</u>

### A. Relevant Procedural Posture

Plaintiff initiated this action with the filing of a complaint in state court on March 15, 2024, before Defendant removed the case to this Court on June 21, 2024. (Doc. 1). Defendant answered the complaint on June 28, 2024. (Doc. 7). Following the parties' voluntary participation in the Court's alternative dispute resolution program, on June 17, 2025, the Court entered the scheduling order setting forth dates and deadlines for discovery, pretrial motions, and trial, including, relevant here, the deadline to file dispositive motions (April 20, 2026). (Doc. 40).

### B. Relevant Facts

The undersigned draws the following facts from the parties' joint statement of undisputed facts (Doc. 43-11), Defendant's separate statement of undisputed material facts (Doc. 43-12) and from other facts deemed undisputed by Plaintiff (Docs. 45-1, 45-2), except where noted. To the extent material disputes exist as raised in the parties' briefing (*see* Docs. 43, 45, 46), unless otherwise stated, the Court will look to the version most favorable to Plaintiff as the non-moving party. *See Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005).

1. <u>Plaintiff's Fall</u>

On March 31, 2022, Plaintiff visited the CVS store located at 6500 Niles Street, Bakersfield, California (the "CVS store" or "subject property"). (Doc. 43-11, Joint Statement of Undisputed Facts ("JSUF") ¶ 1). Plaintiff was dropped off by her husband at the front of the store near the disability access aisle near the area designated as "no parking." JSUF ¶ 3. As Plaintiff approached the store, she tripped and fell on the curb flare. JSUF ¶ 4. Plaintiff had been to the CVS store "about a hundred times" before the incident.[3] (Doc. 43-12, Defendant's Statement of Undisputed Facts ("DSUF") ¶ 1).

---

[3] Plaintiff disputes in part Defendant's assertion that she "had never experienced difficulty walking in the area of the fall prior to [the incident]." (Doc. 45-1, Plaintiff's Response to DSUF ("PRDSUF") ¶ 2). Although Plaintiff's knowledge of the area is a factor considered below

After Plaintiff fell, Destiny Salazar, a manager in training at the CVS store, made a report of the incident to the store's insurance representative and followed the directions provided to her, including by obtaining the video of the incident pursuant to CVS protocol.[4] DSUF ¶ 5. Tim Smith, the store manager at the CVS store, had no knowledge of any customers or employees complaining about the difficulty seeing or navigating the specific curb where Plaintiff fell or of anyone tripping over the curb before Plaintiff's incident on March 31, 2022, from the time he started as manager of the store in August 2021. JSUF ¶ 8; PRDSUF ¶ 8.

2. <u>October 2018 County Inspection</u>

The building plans of the CVS store were dated May 5, 2018. (Doc. 45-1, Plaintiff's Separate Statement of Undisputed Material Facts ("PSSUF") ¶ 21). On October 10, 2018, an inspector from Kern County Department of Public Works signed off on the accessibility requirements for the subject property. DSUF ¶ 14; PRDSUF ¶ 14. The subject curb ramp, its flare side, and the adjacent access aisle at the CVS store were compliant with the ADA at the time of the incident.[5] DSUF ¶ 17; PRDSUF ¶ 17.

The building plans for the subject property indicate that the curbs at the front of the two accessible parking spaces on each side of the access aisle where Plaintiff entered the CVS store were to be painted blue but they were not painted blue at the time of the incident. PSSUF ¶ 8. There is no statutory requirement that a curb or the curb flare be painted blue or any other color. PRDSUF ¶ 13.

---

regarding whether the alleged defect is nontrivial, whether she had trouble walking in the area of the fall prior to the incident is not dispositive to that determination.

[4] Whether Defendant's employees complied with CVS protocol following Plaintiff's fall is not material to the determinative issue in dispute, namely, that Defendant's failure to paint the curb blue rendered (or did not render) the relevant curb's condition to be defective or dangerous in a nontrivial way.

[5] As discussed further herein, Plaintiff argues that the dangerous condition at issue is a section of curb made difficult-to-detect because of Defendant's failure to paint the section blue, as called for by Defendant's building plans for the premises at issue. Accordingly, although the parties dispute in various respects other aspects of the curb's physical presentation, such as height differential, taper, and slope, these issues do not create genuine disputes of facts material to the undersigned's findings and recommendations.

3. Sam Attal Report

Plaintiff's retained expert, Sam Attal, is a licensed civil engineer and qualified to design parking areas, including safety considerations. PSSUF ¶ 12. Mr. Attal took a photo of a similar flared curb area at a different CVS store where the curbline was painted yellow. PSSUF ¶ 13. Mr. Attal prepared a report containing his opinions regarding the condition of the curb and Plaintiff's fall. PSSUF ¶ 23. He opined that the inclining curb, the abrupt height differential at the access aisle, and flared curb ramp created an unsafe trip hazard for pedestrians traversing the property, and the combination of excessive elevation change, lack of visual delineation, and placement along a designated accessible route created a condition that was capable of causing a trip event while simultaneously being difficult for an ordinary pedestrian to perceive and avoid. PSSUF ¶¶ 24-29. Mr. Attal further opined that a pedestrian would not notice the unexpected curb and incline within her pathway, and that Defendant could have painted the inclining curb, which is not uncommon, to provide contrast to assist pedestrians in detecting the hazard. PSSUF ¶¶ 30, 33.

Separately, Mr. Attal opined that Defendant's failure to paint blue the section of curb where Plaintiff fell, consistent with the subject property's building plans, violated a provision of the Bakersfield Municipal Code that requires buildings to be constructed according to their plans. PSSUF ¶¶ 9, 10. According to Mr. Attal, such a municipal code violation is a *de facto* violation of the California Building Code. *Id.*

## II. Evidentiary Objections

### A. Plaintiff's Objections to Defendant's Evidence

Plaintiff raises various evidentiary objections to Defendant's separate statement of undisputed material facts, contending that Defendant's cited evidence does not support the conclusions to which the statements are offered under various provisions of the Federal Rules of Evidence. *See* (Doc. 45-2).

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself[.] … A court can award summary judgment only when there is no genuine dispute of *material* fact. It cannot rely on irrelevant facts, and thus relevance objections are

redundant." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (emphasis original); *see id.* ("[I]mproper legal conclusions … are not facts and likewise will not be considered on a motion for summary judgment."). Accord *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021). Because Plaintiff's objections to evidence on these grounds (*i.e.*, Doc. 45-2 at 2-6) are duplicative and improper on a motion for summary judgment, they are overruled. *E.g., U.S. E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015); *Yellowcake, Inc. v. Hyphy Music, Inc.*, No. 1:20-CV-00988-JLT-BAM, 2025 WL 2196382, at *6 (E.D. Cal. Aug. 1, 2025); *F.D.I.C. v. Varrasso*, No. CIV. 2:11–2628-WBS-CKD, 2013 WL 5493402, at *3 (E.D. Cal. Oct. 1, 2013). Additionally, unless otherwise noted below, Plaintiff's objections based on hearsay are overruled because the undersigned has determined that, even if the subject evidence constitutes hearsay, it is of a type that could be presented in admissible form at trial. *See Sandoval*, 985 F.3d at 666; *e.g.*, *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion.").

**B. Defendant's Objections to Plaintiff's Expert Report**

Defendant objects to the report of Plaintiff's expert witness (the Sam Attal Report, *supra*) and to various statements he made during deposition on numerous evidentiary grounds, including relevance, lack of foundation, and hearsay. (Doc. 46-1). Apart from general evidentiary objections, Defendant also objects to the report and certain deposition testimony on the grounds that Mr. Attal is not qualified under Rule 702, Federal Rules of Evidence, to render several of the opinions Defendant challenges here. *See id*. at Nos. 4, 7, 9-10, 12-13, 15-16, 18-22 (citing Fed. R. Evid. 702).

First, mindful of the legal authorities and standards cited above in relation to addressing Plaintiff's evidentiary objections, the Court overrules Defendant's general evidentiary objections for the same reasons, unless noted below.

Second, to support its argument that Mr. Attal is not qualified under Rule 702 to render virtually any of his expert opinions or testimony, Defendant cites Mr. Attal's deposition testimony that (1) he is not a California licensed civil engineer, (2) he has no experience or education in

designing ADA access ramps or side flares, and (3) he has no experience or education in human factors or biomechanics to opine on conspicuity, visual cues or causation. *Cf.* (Doc. 46-1 at Nos. 4, 7, 9-10, 12-13, 15-16, 18-22) *with* (Doc. 46 at 9-10).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To be admissible under Federal Rule of Evidence 702, an expert witness must be qualified and the testimony must be reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993); Fed. R. Evid. 702. The trial court serves a special "gatekeeping" function with respect to Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In the proper execution of this gatekeeping role, "a district court may properly exclude unreliable, and therefore inadmissible, expert testimony when deciding a motion for summary judgment." *Doucette v. Jacobs*, 106 F.4th 156, 169 (1st Cir. 2024) (citation and footnote omitted). Accord *Pyramid Tech., Inc. v. Hartford Cas. Ins. Co*., 752 F.3d 807, 817 (9th Cir. 2014) (upholding district court's exclusion of expert opinion on summary judgment because expert did not have the knowledge or experience required under Rule 702 to permit him to give the opinion proffered); *Kirstein v. Parks Corp*., 159 F.3d 1065, 1067-68 (7th Cir. 1998) (affirming district court's rejection of expert opinion offered by plaintiff's safety engineer in opposition to summary judgment motion as "unscientific speculation offered by a genuine scientist" because expert was not a chemist and the opinion rendered required expertise in chemistry).

Nothing in the record suggests that Mr. Attal has educational background, experience, or other expertise qualifying him to render opinions about what a pedestrian reasonably could be expected to detect upon confronting a curb of the type Plaintiff confronted here. Mr. Attal's report and attached expert materials reflect that he is an expert in civil engineering but do not evidence that he holds expertise in any field that could inform a qualified opinion about the psychology or biomechanics of a pedestrian navigating a curb. It is Plaintiff's burden as the proponent of Mr. Attal's testimony to prove the admissibility of his opinions at least by a preponderance of the evidence. *Engilis v. Monsanto Co*.,151 F.4th 1040, 1049-50 (9th Cir. 2025); *Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996). Here, given that Mr. Attal's expertise is in the

field of civil engineering, the Court finds Plaintiff has not carried her burden under Rule 702 and 703 to establish that Mr. Attal's expertise to opine about the foreseeability of a pedestrian's detection of a curb's height differential and that such an opinion is inadmissible as "unscientific speculation offered by a genuine scientist." *Kirstein*, 159 F.3d at 1067-68. The Court finds that this opinion is no more than a drawing of an inference from the facts of the case and without relating the inference drawn to any specialized knowledge in Mr. Attal's field of expertise. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."). *E.g., Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL 341135, at *4-5 (E.D.N.Y. Mar. 9, 2020) (finding expert witness, a civil engineer, not qualified under Rule 702 to opine that a shower stall where plaintiff fell was dangerous based on the expert's assessment of the biomechanics of human pedal motion, which was an area outside his expertise).

## III. <u>Governing Authority</u>

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

On summary judgment, each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). Furthermore, "[a]t

summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation and citation omitted).

"[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## **IV. <u>Discussion</u>**

In the complaint, Plaintiff asserts two causes of action under California state law for (1) negligence and (2) premises liability. *See* (Doc. 1-2 at 8-9). In support of both claims, Plaintiff alleges that when she entered the CVS store via the lowered access point of the sidewalk for

wheelchairs and disabilities, she did not see the incline of the curb due to the lack of paint and designation of an incline and tripped and fell as a result, sustaining injuries. *Id.* Plaintiff seeks wage loss, loss of use of property, hospital and medical expenses, damages, and loss of earning capacity arising from her fall on the unpainted incline at Defendant's property. *See id.* at 7.

Defendant argues summary judgment is warranted because there is no evidence that there was an unsafe condition on CVS's property that created an unreasonable risk of harm, CVS's failure to paint the subject curb blue according to its building plans did not render the curb dangerous, and CVS did not have notice of any unsafe condition on its property at the location of Plaintiff's fall. *See* (Doc. 43 at 2). Defendant notes that a property owner is not liable for injury "caused by a minor, trivial, or insignificant defect on his property" (*id*. at 15, quoting *Cadam v. Sommerset Gardens*, 200 Cal. App. 4th 383, 388-89 (2011)) and relies on the opinion of its expert witness that any risk of injury created by the unpainted curb was "trivial or insignificant." *Id.* at 13.

Plaintiff argues that Defendant's failure to paint blue the section of curb where she fell – as was called for by Defendant's building plans for the property (revealing that the curb was intended to be painted blue) – "is exactly what made the curbline difficult to detect, and therefore, in the opinion of Plaintiff's expert, Sam Attal, made the curbline a dangerous condition." (Doc. 45 at 6-7). *See id*. at 12 (characterizing "the fact the curb was not painted blue" as "a central issue in the case"). Plaintiff relatedly points out that Defendant's failure to follow its building plan in this regard (*i.e.*, to paint the curb blue) establishes a violation of the Bakersfield Municipal Code and, per se, a California Building Code violation. *Id.* at 6. Plaintiff separately argues that she need not present disputed issues of fact regarding Defendant's notice of the dangerous condition to defeat summary judgment because Defendant created the dangerous condition (by not painting blue the section of curb at issue) and, thus, notice is not a required element of her claims.

1. <u>Governing Authority – Negligence and Premises Liability</u>

In California, "[t]he elements of a negligence claim and premises liability claim are the same[.]'" *Lemberg v. JP Morgan Chase Bank, N.A.*, No. 17-cv-05241-JSC, 2018 WL 1046886, at *2 (N.D. Cal. Feb. 26, 2018) (citing *Kesner v. Sup. Ct.*, 1 Cal. 5th 1132, 1158 (2016)). Thus, on summary judgment, courts evaluate negligence and premises liability claims under the same legal

standards. *See, e.g.*, *Bean v. Costco Wholesale Corp.*, 561 F. Supp. 3d 915, 920 (E.D. Cal. 2021); *Wilson v. J.P. Allen Co.*, 57 F. Supp. 3d 1249, 1253 (C.D. Cal. 2014); *Cole v. CVS Pharmacy, Inc.*, No. 1:19-cv-01384-JLT-EPG, 2022 WL 2791354, at *5 (E.D. Cal. July 15, 2022). Both claims require a plaintiff to show: "(1) [a] defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *See Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).

"[A] property owner has 'a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm.'" *Cole*, 2022 WL 2791354, at *5 (quoting *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1619 (1989)). "Generally, a property owner who knows or should know of a dangerous condition that could expose visitors to an unreasonable risk of harm owes a duty of ordinary care to make the condition safe or warn visitors." *Id.* (citing *Bridgman v. Safeway Stores, Inc.*, 53 Cal. 2d 443, 446 (1960)). A store owner exercises ordinary care by "making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved." *Id.* (citing *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001)); *see Wilson*, 57 F. Supp. 3d at 1253 ("Commercial property owners … owe the patrons duties 'to exercise reasonable care in keeping the premises relatively safe.'") (quoting *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 421 (2012)). "This duty does not, however, require the store owner to ensure the safety of its patrons." *Id.* (citing *Ortega*, 26 Cal. 4th at 1206).

"While under some circumstances, negligence may be inferred from the existence of a dangerous condition, the burden rests upon the plaintiff to show the existence of a dangerous condition, and that the defendant knew or should have known of it." *Id.* (quoting *Harpke v. Lankershim Ests.*, 103 Cal. App. 2d 143, 145 (1951)). Accord, *Bean*, 561 F. Supp. 3d at 920 (in the slip-and-fall context, a plaintiff "must prove the store owner had actual or constructive notice of a dangerous condition prior to the plaintiff's injury to establish causation.") (citing *Ortega*, 26 Cal. 4th at 1206). Constructive notice may be inferred when the dangerous condition "has existed

long enough for a reasonably prudent person to have discovered it." *Cole*, 2022 WL 2791354, at *5; (citation omitted); *see Ortega*, 26 Cal. 4th at 1207 ("Each accident must be viewed in light of its own unique circumstances.").[6]

2. Analysis – The Alleged Defect is Trivial

As a preliminary matter, the parties do not dispute that the duty applicable in this case is the landowner's duty to exercise reasonable care to keep the premises reasonably safe. *See* (Doc. 43 at 13) (citing *Ortega*, 26 Cal. 4th at 1205); (Doc. 45 at 10) ("The general duty is clear in the case law—landowners have a duty 'to maintain land in their possession and control in a reasonably safe condition.'") (citing *Jones v. Awad*, 39 Cal. App. 5th 1200, 1207 (2019)).

Defendant asserts that "the fact that the curb flare was not painted blue, regardless of whether the original plans indicated the curb flare would be painted blue, is irrelevant and not evidence of a dangerous condition on the [subject property]." (Doc. 43 at 13). Defendant argues it is undisputed that CVS was in compliance with the 2010 ADA and 2016 California Building Code as it related to the curb ramp, its flared sides, and the adjacent access aisle, offering in support deposition testimony of its expert Mark Blanchette and the expert testimony of Plaintiff's expert, Mr. Attal. *Id.*; *see* (Doc. 43-7, Mark Blanchette Deposition Testimony and Rule 26(b)(6) Report ("Ex. F")); (Doc. 43-4, Ramon Gerado Deposition Testimony ("Ex. C")); (Doc. 43-5, Destiny Salazar Deposition Testimony ("Ex. D")); (Doc. 43-8, Sam Attal Deposition Testimony ("Ex. G")). Defendant contends that while the subject property's building plan indicated the section of curb at issue was to be painted blue, the fact that it was not so painted is immaterial given that a county inspector signed-off on the curb's construction as being ADA compliant. Defendant further argues that it acted with reasonable diligence in inspecting its premises twice a day for any potentially dangerous conditions or safety issues and reporting such issues as they arose, relying on the deposition testimony of CVS witnesses including District Leader Ramon Gerard, former property manager Tim Smith, and former property manager-in-training Destiny Salazar, who "all testified that there had never been an incident of a customer complaining of tripping or otherwise having

[6] Because Defendants only move for summary judgment on the elements of duty and breach of duty, the Court does not address the two other elements of Plaintiff's negligence and premises liability claims (causation and damages). *See generally* (Docs. 43, 45, 46).

difficulty navigating the curb flare at the location of Plaintiff's fall." *Id.* at 14-15; *see* Exs. C, D; (Doc. 43-6, Tim Smith Deposition Testimony ("Ex. E")).

Plaintiff does not dispute that the curb complied with ADA regulations but contends that whether the condition of the curb where Plaintiff fell is dangerous is a question of fact. (Doc. 45 at 5, 11-13). Plaintiff offers the expert opinion of Mr. Attal —that had Defendant painted the flaring curbline blue according to Defendant's own building plans, the curb would have been easier to detect—as evidence that the condition of the curb was dangerous. *Id.* at 10-11; *see* (Doc. 45-4 at 36-55, Sam Attal Curriculum Vitae and Expert Report ("Ex. 3")); (Doc. 45-4 at 57-66, Sam Attal Deposition Transcript ("Ex. 4")). Plaintiff separately argues that whether a condition is a trivial defect "depends on all the circumstances[,]" and here, Mr. Attal's testimony and opinions establish that the unpainted curb was a dangerous condition. *Id.* at 11-12 (citing *Kasparian v. AvalonBay Communities, Inc.*, 156 Cal. App. 4th 11 (2007)).

"Trivial defects are minor deformities that, as a matter of law, are not dangerous." *Boogren v. Costco Wholesale Corp.*, No. ED-CV-19-1744-DMG-KKX, 2020 WL 11772531, at *3 (C.D. Cal. Nov. 18, 2020) (citing *Fielder v. City of Glendale*, 71 Cal. App. 3d 719, 732 (1977)); *see Cadam v. Somerset Gardens Townhouse HOA*, 200 Cal. App. 4th 383, 388–89 (2011), *as modified* (Oct. 28, 2011) ("[W]hat constitutes a minor defect may be a question of law."). "The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects." *Kasparian*, 156 Cal. App. 4th at 27 (citation omitted); *see Lopez v. United States*, No. 8:17-cv-01470 DOC (JDEx), 2019 WL 1423771, at *6 (C.D. Cal. Feb. 5, 2019) ("California has recognized that 'persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition.'") (citing *Ursino v. Big Boy Rests.*, 192 Cal. App. 3d 394, 398 (1987)). "Although sometimes referred to as the trivial defect defense, the trivial defect doctrine is not an affirmative defense but rather an aspect of duty plaintiff must plead and prove." *Id*. "The trivial defect doctrine initially was developed to protect public entities from liability where conditions on public property create a risk 'of such a minor, trivial or insignificant nature in view of the surrounding circumstances ... no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a

manner in which it was reasonably foreseeable that it would be used.'" *Lopez*, 2019 WL 1423771, at *6; *see Ursino*, 192 Cal. App. 3d at 399 ("[The trivial defect doctrine] permits a court to determine 'triviality' as a matter of law rather than always submitting the issue to a jury [and] provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property.").

Whether a defect is trivial involves consideration of several factors:

> First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner.

*Stathoulis v. City of Montebello*, 164 Cal. App. 4th 559, 567-68 (2008). "[B]efore the Court can conclude that a condition is trivial, it must be able to thoroughly analyze the condition and the risk it presents." *Lopez*, 2019 WL 1423771, at *6 (citing *Brown v. Nagata*, No. C 08-04350 MEJ, 2009 WL 5218036, at *4 (N.D. Cal. Dec. 29, 2009)). "California courts have opined 'there is no need for expert opinion' in determining whether a defect is trivial." *Elatar v. Omni Hotels Mgmt. Corp.*, No. EDCV 25-00621-KK-BFMx, 2025 WL 4631981, at *3 n.4 (C.D. Cal. Nov. 12, 2025) (citing *Fielder*, 71 Cal. App. 3d at 732); *Coolidge v. Target Corp.*, No. CV-18-00842-SVW-RAOx, 2018 WL 6016947, at *3 (C.D. Cal. July 30, 2018) ("[I]t is for the Court, not Plaintiff's expert, to decide whether the [defect] in question was trivial as a matter of law.")). "'[A] history of other similar injuries' may also weigh against triviality." *Id.* (citing *Ursino*, 192 Cal. App. 3d at 397).

Regarding the issue of the triviality of the defect at issue here (a flared section of curb that, in Plaintiff's view, was not conspicuously painted), Plaintiff argues that the decision of the California Court of Appeal in *Kasparian v. AvalonBay Communities, Inc.*, 156 Cal. App. 4th 11 (2007) is instructive. (Doc. 45 at 11). In that case, the appellate court considered whether, as a matter of law, the recessed nature of a drain, viewed in the context of the surrounding circumstances, gave rise to a hazardous condition or merely a trivial defect. *Kasparian*, 156 Cal.

App. 4th at 28. The court looked to "whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate." *Id.* at 27. The court explained it "should view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment of two horizontal slabs or whether it consists of a jagged and deep hole" and also to "other factors such as whether the accident occurred at night in an unlighted area" or "if there is any evidence that other persons have been injured on this same defect." *Id.* The court found that the lower court's grant of summary judgment in favor of the landlord-defendant based on the trivial defect doctrine was error given the existence of disputed issues of fact and because the trial court's analysis focusing "solely on the depth of the recession and on [plaintiff's] deposition testimony" regarding her view of the drain, the absence of debris or other foreign material on the ground, and the lighting conditions, was "too narrow." *Id.* at 28, 30. The court noted that plaintiff's two experts proffered evidence addressing factors relevant to whether the recessed nature of the drain gave rise to a hazardous condition, including the severity of the slope of the drain, the varying size and profile of the depression, the lack of warning or color distinctions to warn that the drain is recessed, and the fact that the drain at issue was not flush compared to "all other drains in the immediate vicinity of the [subject] drain[.]" *Id.* at 28.

Here, to refute Defendant's argument that the unpainted curb presented merely a trivial defect, Plaintiff relies almost exclusively on Mr. Attal's expert report and testimony. Specifically, Mr. Attal opined that Defendant's noncompliance with the original building plans, which provided for the curb to be painted blue, is a violation of the Bakersfield Municipal Code and, hence, a per se violation of the California Building Code such that the "very nature of the noncompliance is … what made the curbline difficult to detect" and "made the curbline a dangerous condition." *See* Ex. 3. However, it is undisputed that the subject curb ramp complies with the ADA and Plaintiff's only evidence of a violation of the California Building Code relates to the deviation of the curb's color from the building plans. *See* Ex. 3 at 54-55. Even accepting Plaintiff's proposition that compliance with state code and ADA regulations does not render a condition necessarily "safe," it does not follow from the facts in the light most favorable to Plaintiff that a condition is rendered any more "dangerous" than its existing state merely because its construction and/or presentation deviates

from a building plan and such deviation constitutes a violation of a municipal code provision. Plaintiff cites no authority in support of such an argument and Mr. Attal does not opine that the mere fact of such a municipal and state code violation contributed to the dangerousness of the curb. *See id.* at 54.

Next, Mr. Attal opined that, without visual cues or warnings, pedestrians could not reasonably be expected to detect and anticipate the height differential of the unpainted curb and, thus, that it was "foreseeable that a pedestrian, like Plaintiff, would not notice the unexpected curb and incline within her pathway." *Id.* at 50. For this proposition, Mr. Attal cites two articles that he characterizes as "studies." Although it appears the two studies were attached as exhibits to the original version of Mr. Attal's expert report (*see id.* & nn.7-8), the studies were not included with Plaintiff's filings in opposition to Defendant's motion for summary judgment. And as discussed above, Mr. Attal has not demonstrated to the Court that he possesses expertise by his experience, education, or otherwise that would qualify him to render an opinion about a pedestrian's visual acuity or ability to detect and/or anticipate curb gradations. Accordingly, the Court is unable to undertake its gatekeeping functions under Rules 702 and 703 to assess whether the studies are based on sufficient facts and data and, separately, are of the type that experts in the field would reasonably rely upon.

Even if Plaintiff carried her burden under Rules 702 and 703 to establish that Mr. Attal possesses sufficient expertise to render the disputed opinions in this regard, courts routinely discount or disregard expert opinions in determining whether a defect is trivial. *E.g.*, *Elatar*, 2025 WL 4631981, at *3 n.4; *Coolidge*, 2018 WL 6016947, at *3. Moreover, unlike the two expert opinions relevant to the court's trivial defect analysis in *Kasparian*, here, Mr. Attal's opinions lack meaningful consideration of the surrounding circumstances on the day of Plaintiff's fall. Specifically, the opinions do not address or take into account the quality and efficacy of other visual cues apparent in the adjacent curb ramp and access aisle for a pedestrian to detect and anticipate the flaring curbline, including the blue-striped disability paint along the access aisle and the yellow-marked panel above the curb.

Moreover, Plaintiff has not established any additional factors or offered any additional evidence that may have informed any conclusion that the unpainted curb was a nontrivial defect. Importantly, Plaintiff proffers no evidence of any other similar incident of a pedestrian falling near the site of the unpainted curb where Plaintiff fell and it is undisputed that Defendant had no notice of any similar incidents occurring either before or after Plaintiff's fall. *See Elatar*, 2025 WL 4631981, at *3 ("'[A] history of other similar injuries' may also weigh against triviality.") (quoting *Ursino*, 192 Cal. App. 3d at 397); *id.* at *4 (noting it was undisputed there was no history of other similar injuries caused by the alleged dangerous condition).

In short, this case is not like *Kasparian* – it is more like the facts presented in *Gonzalez v. Costco Wholesale Corp*. *See* No. EDCV 18-1761 JGB (SHKx), 2019 WL 13063614 (C.D. Cal. Oct. 23, 2019). In *Gonzalez*, the plaintiff tripped on a metal plate protruding from the floor inside the defendant's store and fell. *Id.* at *2. He alleged that while his view of the plate was not obstructed, when he tripped, he was looking forward at a display on the wall. *Id.* The court deemed the metal plate a trivial defect and granted summary judgment to the defendant. The court relied on the fact that the area of the trip-and-fall was well lit, no obstructions prevented the plaintiff from observing the plate, there was no evidence of any history of similar injuries at the store, and, accordingly, given the small size of the plate, it was not "deceptively dangerous." *Id.* at *4.

Therefore, the evidence establishes as a matter of law that the unpainted subject curb at issue presented no substantial risk of injury and that any alleged defect was trivial.

3. <u>Analysis – Plaintiff Did Not Have Notice of Any Dangerous Condition</u>

Even assuming that the unpainted curb is a nontrivial defect, Plaintiff fails to present any disputed issue of fact that Defendant had notice of any resulting dangerous condition.

"California law has long required … plaintiffs to prove the owner of the premises on which they [fell] had actual or constructive notice of the dangerous condition in enough time to correct it before plaintiff fell." *Bean*, 561 F. Supp. 3d at 922 (citing *Ortega*, 26 Cal. 4th at 1203). Constructive notice may be inferred when the dangerous condition "has existed long enough for a reasonably prudent person to have discovered it." *Cole*, 2022 WL 2791354, at *5; (citation omitted); *see Ortega*, 26 Cal. 4th at 1207 ("Each accident must be viewed in light of its own unique

circumstances.”). “Constructive knowledge may be shown by circumstantial evidence — that is, ‘nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.’” *Bean*, 561. F. Supp. 3d at 922 (citing *Ortega*, 26 Cal. 4th at 1207).

Plaintiff contends that she need not establish that Defendant had either actual or constructive notice of a dangerous condition because Defendant created the dangerous condition in failing to paint the curb blue as called for by the subject property’s building plans. (Doc. 45 at 13). For this proposition, Plaintiff relies exclusively on the case of *Getchell v. Rogers Jewelry*, 203 Cal. App. 4th 381 (2012). *Id.* Plaintiff relatedly contends that even if the Court found Defendant did not create the dangerous condition here, Defendant nevertheless had notice of the dangerous condition because its original intention to paint the curb blue (as evidenced by the building plans) permits the drawing of an inference “that Defendant knew an unpainted curb was less conspicuous than a painted curb, and that the paint was necessary to make the curb safer. This alone constitutes actual notice.” *Id.*

In *Getchell*, an independent contractor working at the defendant’s jewelry store slipped on jewelry cleaning solution in a breakroom. 203 Cal. App. 4th at 385. Because the breakroom was under the exclusive control of the defendant and its employees, the appellate court found that a reasonable inference could be drawn that only defendant or its employees could have caused the cleaning fluid to be on the floor. *Id*. at 386. Thus, the Court held that an inference could be drawn that the defendant had constructive notice of the dangerous condition.

Here, the facts are unlike those presented in *Getchell* – and, for that matter, likely most any slip-and-fall case where a premises owner converts an otherwise safe condition (*i.e*., a floor) into a temporarily dangerous condition (*i.e*., by leaving a slippery substance on the floor) and where the defendant logically can be deemed to have knowledge of the dangerousness of the condition because the condition (a slippery floor) can be nothing except dangerous. Indeed, the case relied upon by the appellate court in *Getchell* for the proposition that a defendant that creates a dangerous condition may be charged with constructive knowledge of its dangerousness (*Hatfield v. Levy Bros*., 18 Cal.2d 798 (1941)) appears to articulate this very reasoning. *See Hatfield*, 18 Cal.2d at 806 (finding defendant store had constructive knowledge of slippery floor because evidence indicated

its employee who spread wax on the floor "knew it was slippery *and therefore dangerous*; his negligence had brought about that condition") (emphasis added). Stated another way, whereas slippery floors always are dangerous, in contrast here, curbs ordinarily are not painted a contrasting color and, thus, the fact that the curb at issue was not painted blue cannot be said (like a slippery floor) to vest Defendant with constructive knowledge of its dangerousness.

Plaintiff's alternative theory of actual or constructive notice is equally unpersuasive and not supported by any cited authorities. The mere fact that the curb at issue was not painted blue as indicated in the building plans cannot logically support an inference that Defendant understood that a blue curb was safer than an unpainted curb and, thus, had actual notice that the unpainted curb was unsafe. In other words, Defendant's mere actual or constructive notice that the unpainted curb deviated from the building plan's provision for a painted curb cannot be construed, even taking the facts in the light most favorable to Plaintiff, as evidence of knowledge of any dangerous condition. Afterall, it is undisputed that the unpainted curb was ADA complaint. And it is similarly undisputed that Defendant had no notice of other accidents involving the subject curb, either before Plaintiff fell and sustained injuries or afterwards.

Accordingly, because as a matter of law the condition at issue involves a trivial defect at most, and because, in any event, Defendant did not have actual or constructive notice of a dangerous condition, summary judgment should be awarded to Defendant.

## V. <u>Conclusion and Recommendation</u>

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendant Garfield Beach CVS, LLC's motion for summary judgment (Doc. 43) be GRANTED.
2. The Clerk of the Court be DIRECTED to enter judgment in favor of Defendant Garfield Beach CVS, LLC and to close this case.

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **<u>Within 14 days</u>** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate

Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent any party wishes to refer to any exhibit(s), that party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 27, 2026**

UNITED STATES MAGISTRATE JUDGE